CASE 73.—ACTION BY FELI ̄ DE LANG AGAINST THE ILLINOIS LIFE INSURANCE COMPANY TO RECOVER ON A POLICY ON THE LIFE OF HIS DECEASED SON.—February 8.

## Illinois Life Ins. Co. v. De Lang

Appeal from Jefferson Circuit Court (C. P. Branch, Second Division).

THOMAS R. GORDON, Judge.

Judgment for plaintiff. Defendant appeals. Reversed.

1. Life Insurance—Application—False Statements—Instructions to Jury.—In an action on an insurance policy of one, who, on the trial is shown to have had tuberculosis prior to the issual of his policy, and who died thereof within a year thereafter, and who in his application stated that "neither he nor his parents, grand parents, uncles, aunts, brothers or sisters had ever had consumption in any form," it was error in the court to instruct the jury "to find for the plaintiff unless you believe from the evidence that the answers to the questions in the application, or some of them, were, without the knowledge of the company, untrue in some particulars, in which true answers would have stated facts or conditions which were reasonable and ordinarily calculated to shorten life or increase the probability of death of the insured, or which if known to the defendant company, it, acting naturally and reasonably, would not have entered into the policy contract."
2. Same.—The jury is not to judge whether if the truth had been stated, facts or conditions would have been disclosed, which

Illinois Life Ins. Co. v. De Lang.

were reasonably and ordinarily calculated to shorten life or increase the probability of the death of the insured, nor is it to determine whether if these matters had been disclosed the company, acting reasonably and naturally would have issued the policy.

3.  Same.—The court should have set out in the instruction the questions and answers set out in the application and should then have told the jury that if these answers or any of them were substantially untrue, and if according to the usual course of the insurance business, the application would not have been accepted and the policy issued if the truth had been stated therein, they should find for the defendant, otherwise they should find for the plaintiff.

4.  Evidence—Wife of Insured—Competency—On the trial of an action against an insurance company on a policy issued to a father on the life of his son, the wife of the deceased son is a competent witness as to the health of her husband, or as to any matters not involving communications between her and her husband growing out of the marital relation.

5.  Expert Testimony.—On the trial of an insurance case as to whether the insured had consumption, no witness, not an expert, should be allowed to state his opinion that the insured had or had not consumption, or that he was in good or bad health. Such non-expert witnesses may tell what symptoms they saw, and let the jury determine what these symptoms indicated.

KAHN, BAIRD & SPINDLE, LONG & PRICE, and STANLEY E. SLOSS, for appellant.

### POINTS AND AUTHORITIES.

1. Misrepresentations are material if the fact concealed increases the risk, i. e., if the prudent underwriter would have refused to make the contract at the same premium, if he had known the truth. (Provident Savings v. Whayne, 29 Ky. Law Rep., 160 to 165.-

2. The question for the jury is, "what would the prudent underwriter, knowing the truth when passing upon the application, have done?" and not what the jury, passing upon the question after the death of insured may think would have been "natural or reasonable." (Provident Savings, etc., v. Whayne, 29 Ky. Law Rep., 167.)

3. The misrepresentation avoids even if the concealed fact did not contribute to the loss, if it in fact increased the risk.

Illinois Life Ins. Co. v. De Lang.

(Provident v. Whayne, 29 Ky. Law Rep., 164; Brown v. Greenfield, etc., 53 N. E., 129, 132.)

4. Erroneous instruction given by the court of its own motion is reversible error, even if appellant did not ask any instruction, so long as he did not lead the court into the error. (South Covington v. Core, decided October 3, 1906; L. & N. v. Roberts, 25 Ky. Law Rep., 438; Railroad v. Hooe, 18 Ky. Law Rep., 522; Swope v. Schaefer, 9 Ky. Law Rep., 160; Blashfield on Instructions, section 133; Hice v. Woodman, 34 N. C., 293; 11 Ency. Pl: & Pr., 216.)

5. This court has held some misrepresentations so palpably material, as that the court must hold them material in law, and must not leave them to the jury. (Metropolitan v. Schmidt, 29 Ky. Law Rep., 255; Provident v. Dees, 27 Ky. Law Rep., 670; American Aid v. Bronger, 12 Ky. Law Rep., 284; Union Central v. Lee, 20 Ky. Law Rep., 839; Mutual Life v. Thompson, 94 Ky., 253; and so in many other courts; Lutz v. Insurance Co., 40 Atl., 1104; March v. Ins. Co., 40 Atl., 1100 (Pa.); Carrolton, etc. v. American, etc., 115 Fed., 77; Fidelity Mut. v. Miller, 92 Fed., 63; Rainger v. Boston Life, 44 N. E., 1088 (Mass.); Brown v. Greenfield, 53 N. E., 129; Dolan v. Mutual Reserve, 53 N. E., 398; Royal Neighbors v. Wallace, 89 N. W., 758 (Mich.); McGovern v. Supreme Order, 80 N. W., 603 (Wis.); Hartford Life v. Gray, 91 Ill., 159; Finch v. Modern Woodmen, 71 N. W., 1104 (Mich.); Ferris v. Home Life, 76 N. W., 1041.-

6. Tuberculosis increases the risk and is material as matter of law, and the court should so rule. (Brown v. Greenfield, 53 N. E., 129, 131; Royal Neighbors v. Wallace, 89 N. W., 758, 102 N. W., 1020; Metropolitan v. Dempsey, 19 Atl., 642; Murphy v. Prudential, 55 Atl., 19, and many others cited in brief.)

7. So as to use of liquor to excess. (Rainger v. Boston Mut., 44 N. E., 1088; Provident v. Dees, 27 Ky. Law Rep., 670; Union Central v. Lee, 20 Ky. Law Rep., 839; Mutual Life v. Thompson, 94 Ky., 253; Hews v. Equitable, 143 Fed., 850; Mengel v. Ins. Co., 35 Atl., 197.)

8. So as to attendance of physicians. (Society v. O'Hara, 120 Penn., 257; Provident v. Reutlinger, 25 S. W., 375; Wall v. Royal Society, 36 Atl., 748; and many others cited in brief.)

9. So as to heart disease. (Metropolitan v. Moravec, 73 N. E., 415.)

(a) And other serious diseases. (Maine Benefit v. Parkes, 81 Me., 97; Hann v. National Union, 56 N. W., 834; Metropolitan v. Schmidt, 29 Ky. Law Rep., 255.)

(b) And pregnancy. (Satterlee v. Modern Brotherhood, 106 N. W., 561.)

10. The misrepresentations were established by affirmative evidence and by admissions of insured prior to his application. Opposing this there was only negative evidence, and opinions of experts. These did not constitute a scintilla of evidence, and the motion for a peremptory instruction should have been sustained. (L. & N. v. Mounce, 28 Ky. Law Rep., 933; L. H. & St. L. v. Jolly, 28 Ky. Law Rep., 989; Kerr v. De Laney, 28 Ky. Law Rep., 1140.)

11. Opinion evidence can not override and does not contradict positive testimony as to the facts. (Cohn v. Costa, 15 La. Ann., 612; Paty v. Martin, ib. 620; Pannell v. Warehouse Co., 113 Ky., 630; L., H. & St. L. v. Jolly, 28 Ky. Law Rep., 993; Champ v. Commonwealth, 2 Met., 17; Johnson v. Turnbull, 130 Fed., 769; Burley v. McGough, 3 N. E. 738.-

12. So of negative evidence. (Stitt v. Huidekopper, 17 Wall., 384; B. & O. v. Baldwin, 144 Fed., 53, and ca. ci.)

13. Opinions of lay witnesses are inadmissible, unless they state the facts. (Pannell v. Warehouse Co., 113 Ky., 630; Hunt v. Hunt, 3 B. M., 575; American Accident Co. v. Fidler, 18 Ky. Law Rep., 161.)

14. Verdict is flagrantly against evidence, and should be set aside. (Hurt v. L. & N., 116 Ky., 545; L., H.' & St. L. v. Hall, 29 Ky. Law Rep., 585; L. & E. v. Gilliland, 24 Ky. Law Rep., 2081; M. & O. v. Reeves, 25 Ky. Law Rep., 2236; L. & N. v. Carter, 23 Ky. Law Rep., 2017; L. & N. v. Hall, 115 Ky., 567.)

15. Admissions of insured are competent evidence against beneficiary.

(a) To prove knowledge on part of insured. (Hews v. Equitable, 143 Fed., 850; Towne v. Towne, 61 N. E., 426; 1 Wigmore on Evidence, section 266; Dilliber v. Home Life, 69 N. Y., 256.)

(b) As part of the res gestae. (Provident v. Whayne, 29 Ky. Law Rep., 169; Manhattan v. Meyer, 109 Ky., 372; Hews v. Equitable, 143 Fed., 850; Swift v. Mass. Mut., 63 N. Y., 186; Ashbury Life v. Warren, 66 Me., 523; Rogers v. Manhattan, 71 Pac., 348; Dolan v. Mutual Reserve, 53 N. E., 398; Mutual Life v. Hillmon, 145 U. S., 285; Smith v. National Benefit, 123 N. Y., 85.)

(c) The policy reserved to insured the right to change the beneficiary, and appellee as beneficiary had no vested interest but a mere contingency. (Hopkins v. Hopkins, 92 Ky., 324; Mutual Life v. Twyman, 28 Ky. Law Rep., 1153; Crice v. Mutual Life, 29 Ky. Law Rep., 91.)

16. Under such circumstances statements of insured before his application are admissible against his beneficiary, just as they would be against his estate if it were the beneficiary, as substantive evidence of the state of his health. (Smith v. National, 51 Hun., 575; Steinhausen v. Preferred, 59 Hun., 336; Terwiliger

Illinois Life Ins. Co. v. De Lang.

v. Industrial, 83 Hun., 320; Thomas v. Grand Lodge, 41 Pac., 882; Fidelity, etc., v. Winn, 33 S. W., 1045; Supreme Conclave v. O'Connell, 32 S. E., 946.)

17. A favorable report of the medical examiner does not preclude the company from showing that insured was ill before the date of his application, where the misrepresentations of insured deceived the examiner.

The company had no knowledge that the representations were untrue. (Gailbreath v. Arlington, 12 Bush, 29.)

18. Such investigation as it made does not take away its right to rely on insured's representations where it in fact relied on them. (Bispham Equity, section 215; 14 A. & E. Ency. of Law, 214; Foley v. Holtry, 43 Neb., 133; Perkins v. Rice Litt. Sel. Cases, 218; Am. Mut. v. Bronger, 12 Ky. Law Rep., 284.)

19. It was error to allow non-expert witnesses to testify that insured was in good health, without describing the symptoms observed by them. (Hunt v. Hunt, 3 B. M., 575-7; Jones v. Perkins, 5 B. M., 222; Am. Acc. v. Fidler, 18 Ky. Law Rep., 161.)

20. Insured's wife was not a competent witness. (Howard v. Commonwealth, 118 Ky., 1.)

GEORGE WEISSINGER SMITH and O'NEAL & O'NEAL, for appellee.

## CLASSIFICATION OF AUTHORITIES.

1. The appellant was not entitled to a peremptory instruction nor was the verdict flagrantly against the evidence. (Holloman v. The Life Ins. Co., 1 Woosa, (U. S.) 674; Joyce on Insurance, sec. 412; Hogle v. Guardian Life Ins. Co., 6 Robertson (N. Y.) 567; 19 A. & E. Ency. of Law, 108d; Provident Savings Life Assurance Society v. Whayne's Adm'r, 20 Ky. Law Rep., 160 (93 S. W., 1049), distinguished.

2. Appellant cannot complain of the instructions given, because it did not ask for instructions like those in the Whayne case, and those given by the court substantially embodied those actually offered. (Arnold v. Garth, 10 Ky. Law Rep., 320; L. & N. R. R. Co. v. Bullins, 15 Ky. Law Rep., 752; Clarke v. Stockdon, 4 Litt., 217; Commonwealth v. Gill, 14 B. M., 18, 19; Louisville, New Albany & Chicago R. R. v. Davidson, 12 Ky. Law Rep., 142; Thomas v. Stickler, 93 S. W. (Ky.) 648.

3. The appellant did not rely upon assured's statements; hence it can not complain of his answers, if they were false. (Bispham's Eq. secs. 207, 214, 215, 216, 217; 14 A. & E. Ency. of Law, 111 (3); Ky. Stats., sec. 639.)

4. Right of wife to testify. (Civil Code, sec. 606; Common-wealth v. Sapp, 90 Ky. 580.)

5. Ground of objections must be stated. (Ency. of Pl. and Pr., vol. 8, p. 163.)

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

On November 16, 1903, Louis C. De Lang applied to the Illinois Life Insurance Company for a policy of insurance on his life in the sum of $2,000, payable to his father, Felix V. De Lang. The application was accepted, and the policy issued on November 28, 1903, the first premium being then paid. The insured died on October 22, 1904, and, the company having declined to pay the amount of the policy, this action was instituted by Felix V. De Lang to recover on it. The company defended upon the ground that certain statements of the insured in his application were untrue, and that it was thereby induced to issue the policy, when, if the truth had been stated, the application would have been rejected. The case was tried before a jury, who found for the plaintiff, and, judgment having been entered upon the verdict, the insurance company appeals.

So much of the application as is relied on to defeat a recovery on the policy is as follows: "(16) Except as mentioned above, have you or any of your grandparents, uncles, aunts, parents, brothers or sisters ever had consumption or tuberculosis in any form? Ans. No. * * * (22) Has change of residence, occupation or climate ever been sought or advised for the benefit of your health? Ans. No. * * * (25) Has there been more than five pounds variation in your weight the last two years? Ans. No. * * * (29) Have you ever used spirituous or malt liquors freely or to excess? Ans. No. (30) What is your

practice, as regards the use of spirituous or malt liquors? State amount consumed daily? Ans. I do not exceed two glasses drinks of spirituous liquors any day, beer daily. I do not exceed nine drinks of wine or malt liquors any day. I do not average more than three drinks alcoholic liquors daily, whisky. *  *  * (32) Are you usually in good health? Ans. Yes. (33) Are you now in good health? Ans. Yes. (34) Have you ever had spitting of blood, habitual cough, or expectoration or shortness of breath? Ans. No. *  *  * (65) Have you ever had an obstinate cough? Ans. No. *  *  * (93) What ailments, diseases or accidents have you had since childhood not previously herein fully explained, including any of the above answered yes? Ans. Name of diseases, measles and mumps. Approximate dates, when a child. Name of disease, typhoid fever. Number of attacks, one. Approximate dates, 1883. Duration, two months. Was recovery complete? Yes. Full name of physician consulted, Dr. Walling, deceased, city. Two years ago had one attack of external piles. I only used an ointment procured from drug store. I have had no recurrence of piles since. (93 1-2) Full name of physician last consulted by you? Ans. Dr. Walling, typhoid, 1883. (94) Have you at the present time, or have you ever had, any disorder, sickness, disease, weakness or disability of any kind not herein mentioned and fully explained? Ans. None.

The defendant introduced proof showing that in the year 1902 the insured lived in Chicago, and toward the latter part of the year was in very bad health; that he lost weight, had an habitual cough, shortness of breath and night sweats; that he could not walk erect, was very haggard looking; that his feet were swollen; that he said that he had consumption, and that he could not walk upstairs to deliver

goods. It also proved by Dr. Pickard that on December 23, 1902, the insured consulted him professionally, stating that he was short of breath; that he was weak; that his appetite was poor; that he had been losing flesh, and that it was difficult for him to walk upstairs. The physician also stated that he then examined him, after having him take off his shirts; that his chest did not dilate and contract as a healthy person; and that, by sounding on the chest and by use of the stethoscope, he concluded that the patient had consumption. His statement as to what he told the patient is in these words: "I told him that he was a man that looked death in the face; that it was coming to us all, and would soon come to him; that he had consumption, and I thought he was the one to know it; that he had, I thought, a fighting chance, but if he lived it would be because he fought well and under good management, but that his chances were very poor. * * * He spoke about a change of climate, and seemed quite anxious. He was predisposed to the idea of a change of climate. He said that his circumstances were not such that he could be properly housed and cared for in Chicago climate, and he would like to go south, and, perhaps, probably, to New Mexico. He asked me what I thought about New Mexico. I told him a great many physicians advised Albuquerque. He told me that, if he could get an appointment as a local preacher or temperance lecturer, in that way he could get transportation cheaper, and he would go to the southwest for his health." He also testified that he subsequently treated him for the next six weeks, and that he left Chicago about the first of February, and came to Louisville. He did not stay long in Louisville, but went with his wife and child to Albuquerque, N. M. The defendant showed that he was examined by a

physician in Albuquerque when he reached there, who also testified substantially as the Chicago physician as to his condition then. The defendant introduced several other witnesses in New Mexico who saw him soon after he arrived there, and testified, in substance, to the same facts as the Chicago witnesses as to his condition. In the fall of the year he returned to Louisville, apparently in good health, and soon after his return took out the policy of insurance referred to. He died about 11 months later of consumption. The plaintiff did not introduce any evidence to contradict the witnesses in Chicago and New Mexico, except himself and the wife of the deceased, who said, in substance, that her husband's health was always good. The plaintiff also introduced several other witnesses in Louisville who saw him there, and observed nothing wrong with his health. When the application was made he was examined by the physician of the insurance company, who found nothing wrong with him, and reported him in normal condition, approving the risk. The physician testifies that his inspiration was then good, and that he made only such an examination as he could make without the use of instruments, relying on his statement that his health had been good. The plaintiff proved that the deceased died of acute miliary consumption, or what is called "galloping consumption," and that this disease is usually fatal in three or four months, rarely running over six.

The court set out in an instruction in part the questions and answers above quoted from the application, and then said as follows: "The law of the case is for the plaintiff, and you should find for the plaintiff the sum of $2,000 with interest thereon at the rate of 6 per cent per annum from the 12th day of December, 1904, unless you believe from the evidence that the

answers given to said questions, or some of them, were, without the knowledge of the defendant insurance company, untrue in some particular, in which true answers would have stated facts or conditions which were reasonably and ordinarily calculated to shorten the life or increase the probability of the death of Louis Constant De Lang, or which, if known to the defendant, Illinois Life Insurance Company, it, acting naturally and reasonably, would not have entered into the policy contract upon the terms and at the annual stipulated premium as shown in the policy sued on, in which latter event the law is for the defendant, and you should so find. (2) If you believe from the evidence that Louis C. De Lang had had tuberculosis of the lungs before the 16th of November, 1903, you will find for the defendant, but, unless you believe from the evidence that Louis C. De Lang had had tuberculosis of the lungs before the date of said application, or unless you believe from the evidence that the answers to the questions above set out, or some of them, were untrue, as submitted in instruction No. 1, the law is for the plaintiff, and you should so find." These instructions are subject to the same objection as those condemned in the case of Provident Assurance Society v. Whayne's Admr., 93 S. W. 1049, 29 Ky. Law Rep. 160. The jury is not to judge whether, if the truth had been stated, facts or conditions would have been disclosed which were reasonably and ordinarily calculated to shorten the life or increase the probability of the death of the insured, nor is it to determine whether, if these matters had been disclosed, the insurance company, acting reasonably and naturally, would have issued the policy. The jury is not to determine by their standards what the insurance company would reasonably have done. In the case referred to we said: "The question was not

what ought the insurance company to have done, had it known the truth concerning the facts misrepresented, but what it probably would have done. That was to be determined not by what it might say afterwards about it—for manifestly that would be a very unsafe standard—but by what was the usual course of those engaged in such business under similar circumstances. The jury must determine the matter, not from their own standards, but from the practice of those engaged in that business. They should put themselves in the place, as it were, of the insurer as of the time the application came to be acted upon, and assuming that all the facts were then known, to determine the probable course of the insurance company by the course generally pursued by those whose habit and business experience generally impelled them to a particular action under such circumstances." The case does not turn on the question merely whether the insured died of a disease which he had at the time he made the application. What he died from is only material so far as it may illustrate the truthfulness of the answers made in the application. The question to be determined is whether the risk which it was about to assume was fairly represented to the company in the application by the insured. The case seems to have been tried in the circuit court, and is largely argued in this court, as though it depended upon the question whether the insured in fact had consumption when he made the application, and whether the doctor who examined him in Chicago, and the doctor who examined him in New Mexico, were mistaken as to what was the matter with him. But, though these matters were both found for the plaintiff, still other matters relied on by the defendant would remain. The court should have set out in the instruction the questions and answers quoted

above, and should then have told the jury that, if these answers, or any of them, were substantially untrue, and if, according to the usual course of the insurance business, the application would not have been accepted and the policy issued if the truth had been stated in the application, they should find for the defendant; and that otherwise they should find for the plaintiff the amount of the policy. In another instruction the court should tell the jury that the question they are to try is not whether the physicians, if any, whom the insured had consulted, were mistaken as to what was the matter with him, or whether the insured at the time of his application in good faith believed he was free from disease, but that the question is whether the answers above set out were substantially true, and if they, or any of them, were untrue, whether, according to the usual course of the business of insurance, the policy would have been issued if the truth had been stated in the application. These are all the instructions which need be given.

In view of all the evidence in the case, the court did not err in refusing to instruct the jury peremptorily to find for the defendant. The rule is that, if there is any evidence, the question is for the jury, and under this rule the peremptory instruction should not have been given.

The insured's wife was a competent witness for the plaintiff. She did not testify as to any communications between her and her husband. She may testify as any other witness as to the health of her husband, or as to what he did, or as to any other matters not involving communications between her and her husband growing out of the marital relation. We see no objection to the testimony which she gave in the case to the effect that her husband did not have this or that symptom at a certain time. No witness,

not an expert, should be allowed to state his opinion that the insured had consumption or did not have it, or that he was in good health or bad health. The non-expert witnesses may detail the facts that they know. They may tell what symptoms they saw or observed, but the jury can judge as intelligently as the witnesses as to what the symptoms indicated. On the return of the case to the circuit court the defendant may have leave to retake any of its depositions it wishes, so as to conform the testimony to the rule we have laid down.

Judgment reversed, and cause remanded for a new trial.