## Supreme Lodge Knights of Pythias v. Bradley.

(Decided December 16, 1910.)

### Appeal from Powell Circuit Court.

1. Insurance, Life—Application—Statements by Applicant—False Statements—The information given by the applicant voluntarily in his application for a policy of insurance when false and known by him to be false will render the policy void, if the company relied upon the correctness of the statements as it had a right to do, and issued the policy in good faith.

2. Examination by Physician—Mistake of Physician—False statements of Applicant.—The mistake of the medical examiner in reporting the applicant a good risk affords no excuse for the false statement of the applicant in his application as to the condition of his health and as to his family history. For the correctness of the answers to these questions he alone was responsible, and though the physician to whom he made the statements failed to discern the presence of any ailment which might affect the risk, still the company was entitled to the truth in regard to the questions asked, in order that it might determine from such information whether it desired the risk.

3. Same—Evidence—Misrepresentation.—In view of the strong case of misrepresentation shown by the record on the part of the applicant, a peremptory instruction should have been given the jury to find for the insurance company.

R. A. THORNTON for appellant.

C. F. SPENCER and D. L. PENDLETON for appellee.

Opinion of the Court by Judge Lassing—Reversing.

On April 12, 1905, Kinney Bradley, a member of "Red River Lodge No. 70, Knights of Pythias of the Grand Domain of Kentucky," made application for membership in section No. 4431, of the Endowment Rank Knights of Pythias, and for insurance to the amount of $1,000. The application was made out on printed blanks. In the application were a number of questions, to be answered by the applicant to the medical examiner. These questions were severally answered by him. The application, among other provisions and agreements, contained the following:

"That I (the applicant) am in sound mental and physical condition; and it is further declared that the foregoing answers and statements, whether written, in my own hand or not, together with the answers and statements made, or to be made, to the Medical Examiner in continuance of this application, are warranted to be full, complete, and true, and shall, together with all the agreements hereinafter made, form the basis of my certificate of membership issued hereon. * * * It is agreed by myself, and binding upon all parties who may hereafter become interested, that if any statement in this application, or to the Medical Examiner, or in any Certificate of Health that may be hereafter given, or in the proofs of loss or death, by which any Certificate of Membership issued hereon matures, is untrue * * * said certificate shall be null and void, and all right, title and interest in and to the same, as well as the rights of my heirs and beneficiaries to the benefits and privileges accruing to members in good standing in this Rank, shall be forfeited."

Said application also contained certain questions, addressed by the medical examiner to the applicant, and relative to the answers to these questions, the applicant signed the following agreement:

"It is hereby agreed that all the foregoing statements and answers made to the medical examiner are warranted to be true, and are offered to the Endowment Rank as a consideration of the contract."

The application and medical examination were promptly forwarded to the company, and on the 24th of April following, a policy for $1,000 was issued to him, and, upon delivery thereof, he subscribed to the following endorsement on said policy:

"I hereby accept this Certificate of Membership subject to all the conditions therein contained."

The policy was made payable to Louie Bradley, brother of the applicant Kinney Bradley, and provided, among other things, that upon the death of Kinney Bradley it would pay the sum of:

"One thousand dollars, out of the Endowment Fund of the Rank, in accordance with and under the laws governing the payment of benefits upon due notice and satisfactory proof of death, and good standing in the Rank at the time of death, and a full receipt and surrender of this certificate, subject, however, to the conditions and agreements subscribed to by said member in his application. * * *

"And it is understood and agreed that any violation of the written mentioned conditions, or the requirements of the laws now or hereafter in force governing this Rank, shall render this certificate and all claim thereunder null and void, and the said Endowment Rank shall not be liable for the above sum or any part thereof."

In the application the following questions were addressed to the applicant, and answered by him as indicated:

"8—a. Are you now in good health? Ans. Yes.

"9—a. Have you consulted a physician during the last five years? Ans. No.

"—b. When and for what disease. B. Ans. No.

"—c. Give the name and residence of such physician? C. No answer.

"11. Have any of your grandparents, uncles, aunts, parents, brothers or sisters been afflicted with consumption, raising of blood, rheumatism, insanity, or with pulmonary, scrofulous, tuberculous, cancerous or any hereditary disease? If so, state particulars. Ans. No.

"12. Have you ever been afflicted with any of the following complaints or diseases:

"—b. Asthma, bronchitis, pneumonia, pleurisy, consumption, spitting of blood, habitual cough or expectoration, shortness of breath, palpitation or any disease of the throat, heart or lungs? B. Ans. No.

"—c. Jaundice, chronic diarrhoea or constipation, fistula, piles, gall-stones or gravel, renal or hepatic colic, dropsy, syphillis or stricture or any disease of the alimentary, genital or urinary organs? C. Ans. No.

"13—b. Have you had any illness or injury, other than as stated by you in Q. 12, or undergone any surgical

operation? If so, state particulars? Ans. No."

The applicant died on December 24, 1905, from tuberculosis of the lungs and cystitis, supposed to be of tubercular origin. In due time proofs of death were furnished by the beneficiary, Louie Bradley, and payment of the policy demanded. The proofs of loss consisted of the statement by the beneficiary and the certificate of the attending physician. Each of these showed that the deceased died of tuberculosis, and certain statements in each were so much at variance with statements that had been made by the applicant as to cause the company to set on foot an inquiry, which resulted in such disclosures that it declined to pay the policy on the ground that it had been procured through fraud and misrepresentations practiced upon it by the applicant. Suit was instituted in the Powell circuit court to enforce its payment. The company pleaded the fraud. Upon this issue the case was tried, with the result that the plaintiff recovered a verdict for the amount of the policy. Upon appeal to this court the judgment was reversed because the trial court refused to permit the application and proofs of loss to be read as evidence. The opinion in the former case is to be found in 109 S. W., 1178. Upon the return of the case it was tried again, with the same result as upon the first trial; and again the company appealed. The judgment upon the second appeal was affirmed on March 19, 1909. We were asked in a petition for rehearing to withdraw that opinion, and upon consideration that was done. The case is now before us for determination.

It is most earnestly insisted for appellant that each of the answers to the five questions in the application above referred to were both material and false, and that the answers to at least four of them must have been known to be false by deceased at the time he made them; and, this being so, no recovery should be permitted. The burden was upon the company to prove its charge of fraud, and this it could only do by showing that statements made to it at the time the policy was issued were false. Hence, when the application was not permitted to be read as evidence, the foundation upon which the company rested its case was destroyed, and in the case, as presented here on the former appeal, there was no substantial evidence to support the defense. But, on the contrary, while there was much evidence tending to show

that deceased had tuberculosis at the time the application for the insurance was made and when the policy was issued, and that a sister had died from tuberculosis, still these facts, though established beyond question, could not be considered as establishing the proposition that a fraud had been perpetrated upon the company. Certainly, with the evidence in that condition, the court would not have been warranted in instructing the jury to find for the defendant. But, on the contrary, if it had not been for the error committed in refusing to permit the application and proofs of loss to be read as evidence, the case would have been affirmed, because the burden, under the state of the pleadings, was upon the defendant, and not the plaintiff.

But upon the present record an entirely different state of facts is presented. It is shown beyond question and without contradiction that the deceased had been treated for tubercular bronchitis and cystitis for some time before he made this application; that he had been advised by his physician that he was in a bad condition of health, and that it was advisable for him to go to a warmer climate; that if he did so he might recover; and that he should not come back. One physician, who treated him in the summer of 1905, testified that he had cystitis. Still another, who treated him in March, 1904, testified that he also treated his sister in her last illness, and that she died of tuberculosis. And another physician, who treated him in 1904 and also in April, 1905, testified that he had cystitis and was unable to work, and that from his family history he concluded that the cystitis was of tubercular origin. Dr. Bullock, of Lexington, who treated him in August, 1905, testified that he had cystitis and tuberculosis of the lungs in an advanced stage, and that the disease had apparently been of several months duration. Yet, in spite of this condition, in his application he stated that he had consulted no physician during the last five years for any disease whatever, that he was in good health, that he had none of a long list of diseases, and particularly no bronchitis or consumption, and that none of his family, blood relations, had died of consumption. It is possible that he might have been deceived as to his condition of health, and that, in stating that he was in good health, told what he believed to be the truth. But as to his answers to the other questions, the conclusion is irresistible that he must have known that they were not true. Not one scin-

tilla of evidence is offered by the plaintiff to show that these answers, or any one of them, were true. and although it is established by the testimony of five witnesses that if truthful answers had been made to these questions no insurance company would have accepted the risk, plaintiff has offered no evidence to the contrary.

Upon this state of the record, what are the rights of the parties? The appellant, of course, did not know the applicant personally, and hence demanded of him certain information in order that it might determine whether or not he was a desirable, insurable risk. This information he volunteered to give, and vouched for its accuracy and truth, and the company had a right to rely upon its correctness. If it did so, and issued the policy on the faith thereof, then clearly no recovery should be allowed. if this information in vital and material respects was false. The statement that he had not been treated by any physician during the five years next before the date of the application was certainly known to him to be false, for he had consulted no less than five different physicians during the fourteen months before that date. and he had been told by at least one of them that he had pulmonary trouble or tubercules of the bronchial tubes, and that he must go to a different climate if he hoped to recover. He was likewise being treated for an inflammation of the bladder, or cystitis, and, judging from the number of physicians whom he consulted, it must have been of an aggravated nature; and although he stated that his health was good when the application was signed the evidence discloses that he consulted a physician about this bladder trouble upon the day following that upon which the application was made. So, too, he knew that his sister had just recently died of tuberculosis. All of this information he not only withheld from the company, but so answered the questions as to preclude any investigation along that line, and led the company to believe that he was a "good" risk, as the medical examiner reported him to be. Just how this physician could have reached this conclusion, if, in fact, he made any examination at all, we confess it is difficult to see; certainly, his examination must have been of the most cursory character, if, indeed, it was not made with a view of passing the applicant. However that may be, his mistake could afford no excuse for the false statements by the applicant as to the condition of his health at that time and during the five years prior thereto, and

as to his family history. For the correctness of the an swers to those questions he alone was responsible, and though the physician to whom he made them failed to discern the presence of any ailment which might affect the risk, still the company was entitled to the truth in regard to the questions asked, in order that it might, from such information and the medical examination, and any other facts at its command, determine whether or not it desired to take the risk. There can be no doubt that he would have been declined if the company had known that he had just lost a sister with consumption and that he himself for some time had been treated by different physicians for tuberculosis and cystitis. The evidence upon this point is conclusive. No reputable company would insure a subject with such a personal and family history.

This being true, it is apparent that each of the an swers to these several questions was not only material, but of vital importance in the execution of the contract. If answered correctly, the contract would not have been entered into; and, as they were answered falsely, the contract based thereon should not be upheld, for to per mit a recovery under such a state of facts would be to put a premium upon fraud and ratify and approve its perpetration. This court has frequently held that, where representations made by an applicant for insur ance have been false in material respects as to the con dition of the health of the applicant, no recovery would be permitted. Brisou v. Metropolitan Life Ins. Co., 115 S. W., 785; Illinois Life Ins. Co. v. DeLang, 124 Ky., 569; Provident Saving Life Assurance Society v. Whayne, 29 Ky. Reporter, 160.

A stronger case of misrepresentations is here pre sented than that disclosed by the record of any of the cases to which we have been cited or to which our atten tion has been called. The answer to every question that was calculated to bring home to the company notice of the applicant's real physical condition and his family history, were not only studiously concealed, but the an swers made to such questions were absolutely false, and must have been known by the applicant to be so.

We conclude that upon this showing a peremptory instruction should have been given. The judgment is reversed and cause remanded for further proceedings consistent herewith.