## Greer's Adm'r v. Harrell's Adm'r et al.

December 16, 1947.

Joe L. Price, Judge.

Lovett & Lovett and H. B. Holland for appellant.

Prince & Acree, Holland G. Bryan and Roy N. Vance, Jr. for appellees.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

In the year 1943, and the early part of 1944, the Tennessee Valley Authority was engaged in the raising of Eggner's Ferry bridge across the Tennessee River, now Kentucky Lake, and it was necessary to provide a ferry for traffic crossing the lake during the months of construction work on the bridge. Three bids for furnishing and operating the ferry were filed with the state, one in the name of Lee Cox, one in the name of Ethridge Harrell, and one in the name of Juanita Greer Lamb. The contract was awarded to the latter. The ferry used consisted of a flat boat, or barge, which was pushed and propelled by a small cabin boat powered with two automobile engines.

The bridge was completed and opened and the ferry contract expired at six p. m. on February 26, 1944. Some several months before that date Ethridge Harrell and Grace Williams went to the home of Cletus Greer and employed him to work on the boats, with apparently no particular ferry boat being mentioned.

On the late afternoon of February 26, 1944, Ethridge Harrell, Cletus Greer and Jess Cooper went up to the Eggner's Ferry bridge in Cooper's car to bring the ferry boat, consisting of the barge and cabin boat, down the lake to Gilbertsville. While the proof shows nothing of what occurred, Cooper, the only survivor, not having testified, it is said in the brief of appellees, without any contradiction thereto, that the car was placed on the barge and the three people above mentioned left the abandoned ferry site on the boat. Cooper got into his car and the other two boys were in the cabin. Cooper went to sleep. He awoke about dawn the next morning and discovered that the boat and barge were grounded on an island, and upon investigation discovered Harrell and Greer dead in the cabin of the boat. The appellant, as administrator of the estate of Cletus Greer, brought this suit against appellee as administrator of the estate of Ethridge Harrell, charging that Cletus Greer met his death by asphyxiation while in the cabin of that boat, and alleging that the death of said Greer was caused by the negligence of Ethridge Harrell, his agents and employees, and that the boat upon which said Greer met his death was in a defective and unsafe condition, which condition was known by Eth-

ridge Harrell, or could have been known by him by the exercise of ordinary care. He prayed for damages in the sum of $20,000 to the estate of decedent.

Defendant denied the allegations of the petition and pleaded contributory negligence on the part of Cletus Greer.

By an amended and supplemental petition Juanita Greer Lamb was made a party defendant, but her demurrer to the amended and supplemental petition was sustained and she is not a party to this appeal.

Upon the trial of the case on October 28, 1946, the Judge of the Marshall Circuit Court peremptorily instructed the jury to find for the defendant John Harrell, administrator, which was done. Motion for a new trial having been overruled the plaintiff has appealed to this court for a reversal of that decision.

### What Proof Shows.

Louie Greer, father of Cletus, testified that his son was 18 years of age at the time of his death; that Ethridge Harrell and Grace Williams came to his house in October 1943, and asked Cletus to go to work on the ferry boat and, as he thought, on a monthly basis. It was not shown by the evidence for whom he was to work or who owned the ferry boat on which he met his death.

Horace Stringer, who had operated a ferry boat at Gilbertsville for about 19 years, testified that he had seen the boat on which Greer died about two days after his death and that it had no ventilators on or about the cabin; that the purpose of these ventilators is to take fumes from the pilot house if there should be a leak into the pilot house from a broken or detached exhaust pipe. He did not testify that there was anything wrong with the exhaust pipe on this particular boat.

Grace Williams testified that she worked for Lee Cox and Ethridge Harrell; that she was with said Harrell when he employed Cletus several months before his death, but did not know whether he was employed to work for Harrell or for Mr. Cox; that Cletus was employed by the day and not by the month, and was not supposed to be on duty on the day of his death, but went along that day for the ride.

Juanita Greer Lamb, sister of Ethridge Harrell, testified that the contract with the Tennessee Valley Authority for the ferry operation was in her name, and the boat in question was licensed in her name; that she received no money for the operation of the boat but turned the checks and money over to Harrell to be given to Mr. Cox, and that Harrell got none of it.

Jack Stringer testified that he knew both Cletus Greer and Ethridge Harrell; that on the night before their death, in Lee Cox's store, he heard Ethridge ask Cletus to go to work with him that night; that he was familiar with the boat on which they lost their lives; that it was in pretty good shape but if it had any ventilators on it he didn't know anything about it; that the windows had to be kept open all the time to allow the fumes to escape from the boat.

Fred Filbeck, a funeral director, testified that he is a licensed embalmer and is coroner of Marshall County; that he embalmed the body of Cletus Greer on the day he was found dead, and held an inquest over his body on the day following; that he had previously enbalmed a small number of bodies of persons who had died from carbon monoxide poisoning. Over objections of defendant's counsel that he could not qualify as an expert he testified that Cletus Greer's death was caused by asphyxiation from carbon monoxide gas. He based this opinion on the condition of the blood,—that it was thin and light in color and did not coagulate in decedent's body though he had been dead several hours. He admitted that he was not a physician and that his diagnosis was based only on his experience as an undertaker, and such limited studies as he had made to secure a license as an embalmer. His certificate as a coroner, filed over objection of counsel for the defendant, stated that Cletus Greer came to his death by asphyxiation from carbon monoxide gas in a motor boat on the Tennessee River near Birmingham, Kentucky.

### The Law of the Case.

The sole ground given by the court below as its reason for sustaining the motion for peremptory instruction for the defendant was that the testimony of Fred Filbeck, the undertaker and embalmer, was not sufficient to meet the requirements of an expert as to

the cause of decedent's death, and for that reason the motion was sustained. In support of its decision the court cited the case of Illinois Life Insurance Co. v. De Lang, 124 Ky. 569, 99 S. W. 616.

A case more nearly in point, and which the court might have cited in support of its ruling, is that of Smith's Adm'x v. Middlesboro Electric Co., 164 Ky. 46, 174 S. W. 773, 776, Ann. Cas. 1917A, 1164. In that case this court said: "D. Z. Gibson, who testified that he was a graduated embalmer of dead bodies, and that he had seen the bodies of two persons who had been electrocuted, and after describing the condition of the body of the deceased and the condition of his veins, arteries, and blood, was asked to state what, in his opinion, was the cause of the death. This was objected to, and the court sustained the objection, when the avowal was made, that if permitted to answer, he would answer that in his opinion his death was caused by electricity. The court was correct in this ruling, because the witness was not asked to confine his opinion to the condition in which he found the body of the decedent, and his limited experience as to persons who had come to their death by electrocution was not sufficient to qualify him to give an opinion upon that subject."

The general rule as to the admissibility of expert testimony is that persons having a technical or peculiar knowledge on certain subjects are allowed to give opinions when the question involved is such that the jurors are incompetent to draw their own conclusions from the evidence without the aid of such expert testimony. One of the cardinal rules governing the admission of expert evidence is that it must usually be of such a character as not to fall within the range of common experience and observation and therefore not to be intelligible to jurors without the aid of opinion. The test of admissibility of expert testimony is not whether the subject matter is common or uncommon nor whether the witness can claim superior judgment or powers of reasoning, or better comprehends or appreciates the matter at issue, but whether the question upon which the evidence is offered is one of science or skill. See Ford v. Providence Coal Co., 124 Ky. 517, 99 S. W. 609. To analyze all the cases in which this court has decided

whether or not expert testimony should be admitted in the particular case would unduly lengthen this opinion. Many such cases can be found in the Kentucky Digest under the subject of Evidence, sub-head Competency of Experts, Key 534-546.

However, since there are other grounds on which the court below might have directed a verdict for the defendant, we deem it unnecessary to decide the question of admissibility of the testimony of the undertaker as an expert witness in this case. Upon a careful reading of all the proof, of which that given above is a summary, it appears that there is a failure of the proof in many respects to connect the deceased Ethridge Harrell with the responsibility for the death of Cletus Greer. The proof does not show that Ethridge Harrell had employed Cletus Greer to work for him (Harrell) in operating the ferry boat, or that the boat belonged to Harrell; that Greer was operating the boat under the direction of Harrell; that the boat was defective and unsafe at the time of the death of Greer, or that Harrell knew or should have known of the defects, or that the defective condition caused the death of Greer. It appears that the cause of the death of Cletus Greer is based largely upon speculation as to how it happened, and the proof fails to show any defect in the boat at the time of the accident, or any act of omission or commission on the part of Ethridge Harrell to which the death of Cletus Greer could be approximately attributed.

For the reasons herein set out the judgment of the lower court in sustaining the motion for peremptory instructions is affirmed.