William A. MUSSELMAN, Movant,

v.

COMMONWEALTH of
Kentucky, Respondent.

Supreme Court of Kentucky.

Feb. 27, 1986.

Thomas E. Clay, P.S.C., Louisville, for movant.

David L. Armstrong, Atty. Gen., John S. Gillig, Asst. Atty. Gen., Frankfort, Michael T. Alexander, Sp. Asst. Atty. Gen., Louisville, for respondent.

LEIBSON, Justice.

The movant challenges the constitutionality of KRS 525.070(1)(b), a paragraph in the *Harassment* statute.

On April 9, 1982 in Jeffersontown, Kentucky, the movant was stopped for speeding. Apparently he was provoked for being stopped when others were not, and admittedly he directed profane language towards a police officer. In the words of the Court of Appeals' Opinion, translated "out of good taste," he called the officer "a little, fat person who had a continuing incestuous relationship with his mother. Unfortunately in doing so he employed a coarse phrase that is the vernacularism for the relationship he had in mind."

The Jefferson District Court found the movant guilty of a violation of KRS 525.-070, Harassment, Sec. (1)(b), which provides:

"(1) A person is guilty of harassment when with the intent to harass, annoy or alarm another person he:

....

(b) In a public place, makes an offensively coarse utterance, gesture or display, or addresses abusive language to any person present."

He appealed to the Jefferson Circuit Court which held the statute was impermissibly broad and that it imposed an undue restriction on constitutional guarantees of free speech. U.S. Const. First Amendment; Ky. Const. Sec. 8.

The Court of Appeals reversed. The Court of Appeals was of the opinion that the statute could be construed as "limited in its application to situations where the 'offensively coarse utterance' or 'abusive language' amounts to 'fighting words' which have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed." The Court of Appeals held that so construed the statute is constitutional.

The problem is that the limiting language utilized to avoid unconstitutionality is supplied by the Court of Appeals and not by the statute. The statute itself, as quoted above, does not state in so many words, or in any words, that it is restricted to "fighting words" or words "which have a direct tendency to cause acts of violence by the person to whom ... addressed."

The restrictive language employed by the Court of Appeals is taken from *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). In *Gooding* a similar Georgia statute was declared unconstitutional. The United States Supreme Court stated:

"The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within 'narrowly limited classes of speech.' " 405 U.S. at 521–22, 92 S.Ct. at 1105–04.

Statutes of this nature, punishing offensively coarse utterances and abusive language, are only constitutional if limited to "fighting words," which are:

"[W]ords that 'have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed.' " Id. at 524, 92 S.Ct. at 1107.

■ The Commonwealth interprets the *Gooding* case to permit this Court to construe a statute facially unconstitutional as constitution by giving it a construction limited in application. We admit to some difficulty in understanding certain dicta in the *Gooding* case which is capable of such an interpretation. While we agree that if the words of a statute are ambiguous the court can and should so construe it as to render it constitutional, clearly the judiciary lacks power to *add* new phrases to a statute to provide a new meaning necessary to render the statute constitutional. The statute as written punishes coarse or abusive language, per se. We cannot add to it a phrase restricting it to language likely to cause violence. As stated in *Hatchett v. City of Glasgow*, Ky., 340 S.W.2d 248, 251 (1960):

"[W]here a statute on its face is intelligible, the courts are not at liberty to supply words or insert something or make additions which amount, as sometimes stated, to providing for a *casus omissus*, or cure an omission, however just or desirable it might be to supply an omitted provision."

■ We have no doubt as to the coarse and abusive nature of the utterance in this case. The language used and the circumstances in which it was used are deplorable. Such words delivered in these circumstances would constitute a violation of a statute written narrowly enough to provide criminal penalty without infringing upon the right of free speech as guaranteed by the United States and Kentucky Constitutions. But the fact that the movant's coarse and abusive language would justify a conviction if the statute were constitutionally adequate adds nothing to the statute as written. As written the statute is unconstitutionally vague and overbroad, and was so held in the *United States v. Sturgill*, 563 F.2d 307 (6th Cir.1977), on appeal from the

United States District Court for the Western District of Kentucky.

■ We reject the argument that a criminal statute facially unconstitutional can be "authoritatively construed" by the courts to render it constitutional, if this is taken to mean the court can introduce an additional concept not present in the statute as written by the legislature. The problem here is not that the statute is unintelligible or ambiguous as written, but that it is overbroad as written. In *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), the court held that a loitering statute was unconstitutionally vague on its face within the meaning of the Due Process Clause of the Fourteenth Amendment, supplying the following measuring stick:

> "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. [Cases cited.] Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.' [Case cited.] Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' " 461 U.S. at 357–58, 103 S.Ct. at 1858–59.

The problem in the present case is not that the District Court judge failed to use an appropriate limitation. Indeed, contrary to the Court of Appeals' Opinion, the record shows that the District Judge made findings that in the circumstances these were "fighting words." She performed admirably in this respect. The problem here is that the statute itself has no such measuring stick, so that, consistent with its terms, in a broad range of cases persons may be found guilty of its violation in circumstances that will infringe constitutional guarantees of free speech.

The movant makes a further argument that if we should adopt the position taken by the Court of Appeals—that the statute though unconstitutionally vague may be authoritatively construed by an appellate court opinion so as to render it constitutional—this surgical narrowing should not apply to *his* conviction which took place before the surgery. *See Ashton v. Kentucky*, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966). Since we have held the statute facially unconstitutional, we need not address this subsidiary issue.

Nothing in this opinion should be construed as approving of the movant's coarse and abusive utterances. On the contrary, we urge the General Assembly to reenact the statute forthwith using appropriate limiting language.

The decision of the Court of Appeals is reversed. The judgment of the Jefferson Circuit Court setting aside the movant's conviction under the harassment statute is affirmed.

STEPHENS, C.J., and AKER, GANT and LEIBSON, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which VANCE, J., joins.

STEPHENSON, J., not sitting.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because I believe the legislature did intend in KRS 525.070 only to prohibit the use of abusive language which would provoke an assault.

Further I do not agree with the application of *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) and *Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), in this case.

Free speech is guaranteed by the First Amendment of the United States Constitution as well as by Section Eight of the Kentucky Constitution. This sacred right is not absolute at all times and under all

conditions. The seminal case of *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) isolates those utterances that are not an essential part of any exposition of ideas and of slight value as a step to the truth. An example of speech that is not protected by the First Amendment is "fighting words," those words, which by their very utterance tend to incite an immediate breach of the peace. The Court of Appeals was correct when it determined that the Kentucky General Assembly did not intend KRS 525.070 to apply to protected speech. The commentary to the statute states that KRS 525.070 replaces KRS 436.150 which prohibited profane cursing or swearing and KRS 437.020 which prohibited the use of abusive language to provoke an assault. Therefore I believe it was the intent of the legislature to create a statute which would prohibit the use of spoken words which would provoke an assault.

*Gooding, supra,* provides that a Georgia statute which is similar to the Kentucky statute was on its face unconstitutionally vague and overbroad in violation of the constitution because the state courts had not by construction limited the statutory proscription to fighting words. In this instance, the Court of Appeals has done exactly that and this Court has followed the wrong path in reversing that decision.

It is clearly within the constitutional mandate of *Gooding,* to interpret the statute so as to only apply to "fighting words." The Kentucky statute, by giving its words their commonly understood meaning has no potential for application outside of the area of "fighting words."

In regard to *Kolender, supra,* I believe that a criminal statute is not unconstitutionally vague on its face unless it is impermissibly vague in all possible applications. In my view the legislature has provided minimal guidelines in this criminal statute so as to avoid any personal abuse by prosecutors or police.

*United States v. Sturgill,* 563 F.2d 307 (6th Cir.1977) holds only that the Kentucky Harassment Statute was unconstitutionally defective insofar as it could not be used as a vehicle for prosecution in federal courts under federal law. *Sturgill, supra,* notes that the statute might withstand a constitutional attack if the Kentucky courts construed the speech involved as not protected by the First Amendment. In the absence of such decision by the Kentucky courts, the harassment conviction was reversed in *Sturgill.*

Although I do not favor judicial legislation, this situation provides the court with the opportunity to perform its proper role by interpreting a legitimate Kentucky statute so as to support the legislation. The invitation has been issued by the majority of the United States Supreme Court in *Gooding* when it determined that a similar Georgia statute was facially unconstitutional because a state court had not interpreted the statute to be limited to "fighting words." Courtesy demands that we accept this invitation.

I would affirm the decision of the Court of Appeals.

VANCE, J., joins in this dissent.