John CARPENTER and Sherry Carpenter, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Nos. 87–SC–98–MR, 87–SC–114–TRG.

Supreme Court of Kentucky.

June 8, 1989.

Larry H. Marshall, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellants.

Frederic J. Cowan, Atty. Gen., David A. Smith, Asst. Atty. Gen., Frankfort, for appellee:

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted John and Sherry Carpenter, husband and wife, on two counts of first degree criminal abuse. Sherry Carpenter was sentenced to five years imprisonment on each count, with the sentences to run concurrently. John Carpenter was sentenced to ten years imprisonment on each count. He was also found to be a second-degree persistent felony offender and his sentences were enhanced to twenty years imprisonment on each count, with the sentences to run consecutively for a total of forty years.

The questions presented on appeal are whether the evidence was insufficient; whether K.R.S. 508.100 is unconstitutionally vague; whether there was improper opinion testimony; whether there was irrelevant testimony which was prejudicial; whether the instructions were improper and whether the PFO conviction was proper.

On June 14, 1986, the Covington Life Squad responded to a call on a choking victim. The Carpenters told the squad attendant that their five-month-old baby had choked on green beans. At the hospital an X-ray taken of the child's head showed severe brain damage caused by a blunt object. The medical witness testified that the injury had been caused by an extremely forceful blow which would be similar to a child falling from a second-story window. The evidence also indicated that the child suffered rib fractures which occurred on two separate occasions. There was no evidence of any green beans. Medical testimony indicated that as a result of the injuries, the child will probably remain severely impaired in a vegetated state for the rest of her life.

John Carpenter was charged on Count I with causing the child's head injury of June 14, and also charged in Count II with causing the rib injuries between May 12 and June 14. He was convicted on both counts. Sherry was convicted on both counts pursuant to a permissive theory of criminal liability.

■ There was sufficient evidence of John's guilt to withstand a motion for a directed verdict. John asserts that the evidence was insufficient as to Count I, but does not challenge Count II. Shortly before May 23, a witness saw John first shake the child and later throw her onto a bed in a fit of rage which resulted in the baby bouncing off the bed hitting her head. There was no dispute that on June 14, the date of the head injury, John and Sherry had exclusive control over the child. The head injury inflicted on June 14 was consistent with a blunt force blow and could not have resulted from an accident. The combination of these factors was sufficient for a jury to reasonably infer guilt on the part of John.

■ Kentucky's criminal abuse statute, K.R.S. 508.100, is not unconstitutionally void for vagueness. At trial, the vagueness challenge was related to the use of the words "may" and "permit." The principal question in such an inquiry is whether the statute gives suitable notice of prohibited conduct.

The Carpenters argue that the word "may" as used in K.R.S. 508.100(1)(b) does not provide a fair description of the prohibited conduct because virtually any conduct directed toward the child had the possibility of placing the child in a situation that may cause serious physical injury. A proper interpretation of the statute as a whole is that it does not apply to every situation where a child is injured but only to those instances where abuse is involved. Abuse is defined in K.R.S. 508.090(1). Similar attacks have been instituted, without success, on child abuse statutes in California and New Mexico where the statutes are similar to that of Kentucky. *State v. Coe*, 92 N.M. 320, 587 P.2d 973 (N.M.Ct.App.1978); *People v. Beaugez*, 232 Cal.App.2d 650, 43 Cal.Rptr. 28 (1965).

■ Now we turn to the use of the word "permit" in the statute. The pertinent part of K.R.S. 508.100(1) involved here punishes the person who, "intentionally abuses another person or *permits* another person of whom he has actual custody to be abused...." Sherry, but not John, argues that the jury was not properly instructed on all the elements of first-degree criminal abuse. She claims that the jury never learned of the element requiring intent. She also complains about the meaning of the word "permit."

The instruction under which Sherry was found guilty on two counts, permitting another to commit child abuse, failed to require proof that she intentionally permitted the abuse. The word "intentionally" was used to define the act of a person inflicting the abuse but was erroneously deleted from the definition characterizing the action of the person permitting the abuse. Consequently, under the instructions Sherry could be convicted for the offense even though she had no intent to permit it. K.R.S. 502.020 provides that criminal responsibility may be imposed where a person having a "legal duty to prevent the commission of the offense, failed to make a proper effort to do so." Neither the indict-

ment, nor the instructions, charge Sherry with criminal responsibility on this basis.

K.R.S. 508.100 punishes the person who intentionally abuses or permits a child in his or her actual custody to be abused. The statute does not repeat the term defining the culpable mental state required to convict before the word "permits." As this Court stated in *American Trucking Ass'n v. Com., Transp. Cab.*, Ky., 676 S.W.2d 785 (1984), "Where a statute is reasonably susceptible of two constructions, one of which will uphold the validity thereof, and the other would render it unconstitutional, the court must adopt the construction which sustains the constitutionality of the statute." *Id.* at 789, 790.

If we interpret K.R.S. 508.100 as intending the intentional culpable mental state as applying only to the person inflicting the abuse and not to the person permitting the abuse, then the statute is necessarily either void for vagueness or overbreadth because the functional element, permitting, is unlimited. *See Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939), for a discussion of the concept of vagueness, and *Musselman v. Commonwealth*, Ky., 705 S.W.2d 476 (1986), for a discussion of the concept of overbreadth.

A proper culpable mental state must be supplied by statutory interpretation in order to provide for the constitutional basis for the statute. This constitutional principle of criminal responsibility was denied in the instructions relating to Sherry. The instructions defining permitting were similarly defective as to John, but because he was found guilty under the instruction as the person who actually committed the abuse, the erroneous instruction produced no prejudice as to him.

K.R.S. 508.100 is constitutionally proper if the word "intentionally" is construed to modify both abuse and permits. This is a logical construction because the legislature intended to impose criminal liability only if the accused were mentally culpable and because the internal structure of the three degrees of the offense of criminal abuse is the same. The only difference in the degrees was the insertion of the words "intentionally, wantonly or recklessly."

■ The instructions should tell the jury what the constituent elements of permitting criminal abuse are. The jury could find Sherry guilty of criminal abuse in the first degree only if she intentionally permitted the abuse. Intent is an essential element and failure to instruct is prejudicial error. *Watkins v. Commonwealth*, Ky., 298 S.W.2d 306 (1957). Here the instructions authorized a conviction on the mental state of the person directly responsible for the abuse and not for the one who permitted the abuse.

■ The Carpenters were not substantially prejudiced by the introduction of opinion testimony that the injuries were intentionally caused. There was no question that the testimony was received from qualified experts. These opinions came from treating physicians who had experience in treating abused children. The objection to the testimony was based on the fact that the opinion invaded the province of the jury and not that the physicians were not qualified to render an expert opinion. Opinion testimony is admissible where it appears that the trier of fact would be assisted in the solution of the ultimate problem. Here the testimony aided the jury in determining that the injuries were not accidentally caused. *Cf. Department of Highways v. Widner*, Ky., 388 S.W.2d 583 (1965). We find no reversible error in the evidence concerning the Carpenters' behavior at the hospital. John's argument on the PFO instruction is unpreserved for appellate review and will not be considered under RCr 10.26, there being no palpable error or manifest injustice.

The judgment of conviction of John Carpenter on both counts is affirmed and the judgment of conviction of Sherry Carpenter on both counts is reversed and remanded for retrial.

STEPHENS, C.J., and COMBS and LAMBERT, JJ., concur.

VANCE, J., concurs in result only.

LEIBSON, J., files a separate opinion, concurring in part, dissenting in part, in which GANT, J., joins.

LEIBSON, Justice, concurring in part/dissenting in part.

Respectfully, I dissent in part.

I would also reverse the convictions as to John and Sherry Carpenter on Count II because the evidence is insufficient. There was no proof this child sustained "serious physical injury" upon any occasion except June 14, 1986, for which John Carpenter was duly convicted in Count I, and Sherry Carpenter will be retried. I concur in this, but not in our decision on Count II.

The proof as to Count II was primarily the testimony of a twelve year old boy who testified that he witnessed a previous occasion about one month earlier where he saw John Carpenter shake the child angrily and then throw her on the bed from which she bounced to the floor.

Although the proof relating to the previous occasion was sufficient to show that John Carpenter abused the child on this earlier occasion, the criminal abuse of a child statute, and the instructions given by the court in this case, required more than simply proof that the child was abused, they required "serious physical injury."[1]

The statute and the trial court's instructions on Count II specify the abuse of the child must be intentional and must be such that it "caused a serious physical injury to [the child] or placed her in a situation that may have caused her serious physical injury." KRS 508.100. In the context of this case, the second part of this phrase must be understood in terms of the dictionary definition of "may," which means proof of blows intentionally inflicted which "have power" to cause serious physical injury. Webster's Ninth New Collegiate Dictionary, 1983 ed.

An accused cannot be convicted under a statute specifying alternative methods for committing a crime unless the proof is sufficient to support a conviction under both of the alternatives. *Hayes v. Commonwealth*, Ky., 625 S.W.2d 583 (1981); *Boulder v. Commonwealth*, Ky., 610 S.W.2d 615 (1980), overruled on other grounds by *Dale v. Commonwealth*, Ky., 715 S.W.2d 227 (1986). Here the proof was insufficient to support not just one, but both theories.

"Serious physical injury" is defined in the Penal Code in KRS 500.080(15). It "means physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ."

In the present case the only evidence of injury to the child on any occasion prior to June 14, 1986, which is covered in Count I, was x-ray evidence indicating healing fractures of the left fifth and sixth ribs, described in the medical testimony as anywhere from seven days to four months old. The Commonwealth's Brief includes a vague reference to "retinal hemorrhaging" to support speculation that the child had brain injury from the incident one month before when the child was shaken and bounced off the bed to the floor. However, this retinal hemorrhaging was found after the serious head injury that occurred on June 14. It is consistent with the brain injury and brain hemorrhaging that occurred that date. It is not evidence of serious injury on a previous occasion.

There was no evidence from which to conclude that these partially healed rib fractures met any minimally acceptable definition for a serious physical injury. At most the evidence with regard to the May incident, which would have been covered by Count II in each indictment, indicated that John Carpenter committed fourth-degree assault, a misdemeanor with which he was

---

1. The statutes define other types of abuse for which criminal liability may be imposed, "torture, cruel confinement or cruel punishment," but the present case does not implicate these alternatives.

not charged, on this prior occasion. It is insufficient to convict Sherry Carpenter of any criminal offense, let alone first-degree child abuse.

As to both John and Sherry Carpenter, the convictions for first-degree criminal abuse on Count II covering any occurrence prior to June 14, 1986, should be vacated, and the charges dismissed.

GANT, J., joins the concurring/dissenting opinion.